HELEN K. ROLLER et al., appellants, v. INDEPENDENT SILO COMPANY, appellee.

No. 47862.

(Reported in 49 N.W.2d 838)

NOVEMBER 13, 1951.

F. C. Gilchrist, of Laurens, and Loth & Melton, of Fort Dodge, for appellants.

Shaw & Shaw, of Pocahontas, Cory & Sackett, of Spencer, and L. E. Matteson, of St. Paul, Minnesota, for appellee.

MANTZ, J.—Plaintiffs' action is to recover damages which they claim were caused by certain negligent acts on the part of the defendant in the erection of a silo on the premises of plaintiffs near Rolfe, Iowa. They claim that such negligent acts caused a fire which destroyed a barn and other buildings on the premises of plaintiffs. They further claim that such negligence was the direct and proximate cause of the damages suffered; further, that they did not by any conduct contribute thereto. Defendant generally and specifically denied the claims of plaintiffs that it was

negligent and pleaded that the plaintiffs were guilty of contributory negligence. When plaintiffs rested defendant moved for a directed verdict on the ground that no negligence on the part of the defendant had been shown. Defendant interposed a counterclaim for the cost of the silo. The court sustained the motion and directed a verdict in favor of defendant. Plaintiffs indicated intention to appeal. The parties then stipulated that the disposition of defendant's counterclaim should be held in abeyance pending the outcome of the appeal to be taken. Plaintiffs then gave notice of this appeal.

I.   The principal questions involved in this appeal are three in number:

(1)  Was the defendant negligent in the construction of the silo in the manner complained of by plaintiffs?

(2)  Was such negligence, if shown, the proximate cause of the fire which destroyed the barn and other buildings of the plaintiffs?

(3)  Were plaintiffs guilty of contributory negligence?

All of these were fact questions and the burden was upon the plaintiffs to establish each of them by a preponderance of the evidence. In passing upon said questions the evidence is to be considered in the most favorable light on behalf of plaintiffs.

II.   There is little conflict in the evidence.  The principal dispute arises over conclusions and inferences which may or may not arise from certain shown or admitted facts. The ownership of the premises, its occupancy, the purchase of a silo to be erected on the farm by the defendant, its erection and location with reference to other buildings, the fire and destruction of the buildings are matters not in dispute.

Plaintiffs owned the real estate which was situated near the town of Rolfe, Iowa.  Plaintiffs are brothers and sisters, with the brothers occupying and operating the farm. It was quite well improved. Electric power and lights came from a high line near the premises. Practically all the buildings were wired and used electricity for lights and power—the house, barn, chicken house and incubator, hog house, machine shed, corncrib and a pump. All this wiring had been in operation for a number of years and prior to June 18, 1949, there had been no trouble arising therefrom.

1280

The main or primary wires came from a transformer which was on a pole at the road on the west side of the farm.

The barn faced west. It was wired by wires entering the west end and continuing through and leaving at the east end. The conduits at each end were of hollow metal about a foot long. At the west end the wires came from a yard pole 90 feet west of the barn and passed through the conduit; went east through the barn and went out through the conduit on the east end; then curved or looped upward to three insulators attached to the east end of the barn and then went to a jet pump in the yard about 30 feet from the barn. The wire insulators at the east end of the barn were 22 feet from the ground.

In the construction of the silo the defendant furnished two men and these were aided by the Kennedy Bros. One Weisbrod was on the ground and supervised and directed the construction work for defendant.

The silo to be constructed was to be 40 feet high and 16 feet in diameter. The defendant picked its location which was to be close to the east end of the barn. It would be about $2\frac{1}{2}$ feet from the three wires where they left the barn on the east end. As a part of the silo there was a $32\frac{1}{2}$ foot rounded metal chute close to the barn. This chute was to be attached to the silo running up and down. The chute was in sections and was put together on the ground. About 10 to 11 feet from the bottom a 2x4 was wired to the inside of the chute and to this was attached a rope running upward to a hoist on the top of the silo. Before they started to raise the chute Lawrence Kennedy suggested that when raised the chute would be close to the barn and the wire, and might do damage and he suggested the moving of the wires. Weisbrod was then on top of the chute. Lawrence Kennedy was to hold the lower end of the chute, and those on the rope were W. C. Kennedy and the defendant's helper. To the suggestion of Lawrence, Weisbrod stated that he had been told how to do it and that "they were going to do it that way." Lawrence had to use his hands to hold the lower end while the two on the rope standing on the ground pulled the rope to lift the chute. The chute weighed about 400 pounds and they found it unwieldy and hard to lift to an upright position. The evidence shows that as it was raised it scraped the

east end of the barn and there was evidence from which it can be inferred that the upper end struck the conduit and wires and in a way got them out of place. As the space between the barn and chute was small they had difficulty in getting the chute past the wires. Kennedy says that in order to get it into position they had to lower it three or four times. W. C. Kennedy, who was on the rope helping lift the chute, testified in part:

"Before we started to raise it [the chute] my brother said to the boss that we would like to take down the wires or else change the position of the chute. The boss answered 'this is the way we will take it up.' * * * It [the chute] rubbed the barn approximately the whole way up and hit the wires also. I noticed it hit the wires. It hit the long wire and the loop wires both. When it rubbed up against the barn, it went up to where those wires were nailed to the barn (insulators) and looped and hit the wires. Mr. Weisbrod told us to run it back down again. * * * We had to raise it with a great deal of force when we pulled on that rope. Whatever it hit, it hit hard. I could not do anything to stop it from doing that."

The weather was quite dry on the 16th and 17th of June, 1949. The silo was completed on the seventeenth and defendant's employees left. There was no trouble with the electric power the sixteenth and seventeenth. Early in the morning of the 18th there was a heavy rain from the east and this was accompanied by lightning. The lights went off. One Thompson, a lineman, came to the Kennedy home to investigate and found a fuse blown out in the transformer. After putting in another fuse he left but shortly afterward the power went off. He came back and put in another fuse in the transformer and looked over the outside lines for twisted wires or what is termed a "short" but found none. He again left and before he reached Rolfe about one and one-half miles away he heard the fire whistle and at once returned to the Kennedy farm. There he found a fire on the east end of the barn right close to the inside opening of the conduit. The fire destroyed the barn and other buildings.

It was plaintiffs' claim that the striking of the heavy chute on the conduit and wires dislodged it to such an extent that the in-

sulation was scraped and damaged and the heavy rain moistened the damaged wires and caused a short and the fire resulted. The evidence showed that the cable as it entered the conduit had three wires all separately insulated. There was expert testimony that if the insulation or covering of the wires was broken or dislodged moisture would likely cause a short circuit and a fire would ensue. This wiring had been in operation for many years. No trouble had been experienced. There was no question as to the location of the fire. There was evidence that the wiring had been damaged and displaced by raising the chute and it seems to us it might be fairly inferred that in the raising of the chute damage had been done to such wiring.

■■ There was some other evidence touching the condition of the wiring. From the record made we feel there was a disputed fact question as to whether the defendant was negligent in the manner complained of by plaintiffs. When different persons might draw different conclusions from the record a fact question is generated and it is the duty of the court to submit such matter to the jury. This court has considered this question many times. On this question of when and under what circumstances the trial court should direct a verdict see Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; In re Estate of Coleman, 238 Iowa 768, 28 N.W.2d 500; Falt v. Krug, 239 Iowa 766, 32 N.W.2d 781; Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240; Lawson v. Fordyce, 234 Iowa 632, 12 N.W.2d 301. Volume 18 Iowa Digest (Trial) Key 142, 143, cites many cases where the rule is announced.

The jury could find that the fire started close to the wiring at the east end of the barn. This part of the wiring was of standard materials and had been in use for years without giving any trouble. There is in the record ample evidence that in the raising of the heavy, unwieldy and cumbersome chute the wires as they entered the east end of the barn had been struck and were in a different position after the chute had been raised. There is evidence that Lawrence Kennedy felt the manner of getting the chute in place was liable to cause harm and he so warned Weisbrod but his advice was ignored. While there was no one who could positively say that the cable as it entered the conduit had

been damaged, yet we think that such result might properly be inferred. We hold that on such matter there was a jury question.

III. In the preceding division we have held that the question of the negligence of defendant was for the jury and that the court erred in ruling otherwise.

Holding that the claimed negligence was for the jury, then we pass to the further question as to whether such negligence, if shown, was the proximate cause of the fire and the resulting damage.

■ Plaintiffs must show that such negligence was the proximate cause of the damage claimed. Whether such negligence was the proximate cause of such damage is a fact question. Whetstine v. Moravec, 228 Iowa 352, 291 N.W. 425; Latham v. Des Moines Elec. L. Co., 229 Iowa 1199, 296 N.W. 372; Sergeant v. Challis, 213 Iowa 57, 238 N.W. 442; Fitter v. Iowa Telephone Co., 143 Iowa 689, 121 N.W. 48; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120. If there was evidence to establish such issue it would be for the jury.

Before setting out from the record certain matters bearing on such question we will set out certain legal rules and principles which have application on such issue or question.

■ The term "proximate cause" has a well-defined meaning and has been defined many times by this court. It means the moving or producing cause without which the injury would not have taken place. We have said that "proximate cause" is "probable cause". Swaim v. Chicago, R. I. & P. R. Co., 187 Iowa 466, 174 N.W. 384; Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N.W. 41; Brownfield v. Chicago, R. I. & P. R. Co., 107 Iowa 254, 77 N.W. 1038; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Whetstine v. Moravec, supra; George v. Iowa & S.W. R. Co., 183 Iowa 994, 168 N.W. 322.

We think that the "proximate cause" of an injury in a legal sense is that cause which in its natural and continuous sequence, unbroken by any new cause, produces an event and without which the event would not have occurred. Proximate cause is an element of negligence. Clark v. Monroe County Fair Assn., 203 Iowa 1107, 212 N.W. 163.

■■ We will go to the record and examine whether or not there were sufficient facts to warrant the jury to pass upon such

matter. The facts need not necessarily be shown directly or by eyewitnesses. They may be shown by circumstantial evidence. Also, by certain inferences which may arise from certain facts and circumstances shown.

In this opinion we have set out certain undisputed facts. There was no evidence on the part of the defendant. The court having directed a verdict for defendant when plaintiffs rested, defendant had no opportunity to offer evidence on its behalf.

There is no question that the damage was done by the fire. Many of the farm buildings were wired for electric light and power. The barn was one of those buildings. The wiring had been in such building for a number of years. As before stated, such wires entered through a metal conduit which protruded on the outside. On the inside where the wires entered the conduit there was a cable enclosing three wires. Close to the end of the conduit these wires were spliced and in the splicing waterproof tape or covering was used. Prior to the time the chute was raised the spliced wires had worked properly. There was expert evidence to the effect that shortly before the chute raising the wires had functioned properly.

There had been an electrical storm about two a.m. June 18, 1949. Lightning struck the power line and the power went off. No lightning struck at the farm or in the immediate vicinity. An investigation some six hours later showed fuses blown in the transformer out in the road. Otherwise, the transformer was undamaged. An expert witness testified that had the lightning entered from the high line and gone into plaintiffs' lines the transformer at the road would have been damaged. Other high-tension wires leading out of Rolfe were likewise without current. The fuses were replaced and the power came on. In a very short time the power again went off and other transformer fuses were put in and plaintiffs' lines energized. About fifteen minutes later, when a milking machine was being operated, fire was observed coming out of the east end of the barn and close to where the conduit was located. When first seen the fire was small. There is evidence that the fire when first observed was at a point near the spliced part of the cable where it came out of the conduit.

In the present case the defendant argued that the record failed to show that the damage claimed by plaintiffs to the barn,

conduit and wiring was the direct and proximate cause of the fire. It argues that the fire could have been caused by the lightning storm of the night before. While there was evidence that lightning struck the power line which supplied electrical current to plaintiffs' premises, yet there is no evidence that there was any damage to the transformer out in the road or to the farm wiring system. The record shows that all that happened to the transformer was the blowing of a fuse. The evidence shows that the electrical storm took place about two a.m. and at that time the power went off. Had the lightning struck plaintiffs' wires at two a.m. fire from that source would have occurred very soon thereafter. There was a suggestion in argument by defendant that the insulation where the wires had been spliced might have been eaten into by rats. There is nothing in the record upon which to base such a claim. It would simply be speculation and conjecture. On the other hand, plaintiffs claim that the negligence of the defendant damaged the wiring, and that by reason thereof the fire ensued. Plaintiffs urge this as grounds for recovery. As above stated the defendant argues that such is speculative and does not exclude other possible causes of the fire. We think that on that matter the question was for the jury and it was for them to determine the real cause of the fire. In the case of Latham v. Des Moines Elec. L. Co., 229 Iowa 1199, 1207, 296 N.W. 372, 375, this court (Justice Oliver) stated: "Plaintiff was not required to prove his theory of causation by evidence so clear as to exclude every other possible theory. The evidence must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence."

See cases collected and discussed in Hayes v. Stunkard, 233 Iowa. 582, 10 N.W.2d 19, and Martin v. Bankers Life Co., 216 Iowa 1022, 250 N.W. 220.

We think it unnecessary to cite further authority. Nor is it necessary to further elaborate on the facts. Few of them are in dispute. We have held in a preceding division that the jury could find the defendant negligent in raising the chute; also that as a result thereof the wires were damaged and that the rain and moisture could have caused what is termed a "short" which caused the fire. No one saw the fire start; it was first observed burning

1286

close to where the wires were spliced. We think that the jury could properly consider the matter of the proximate cause of such fire.

IV. The record shows that the premises in question were owned by the plaintiffs. An allegation to that effect in their petition was admitted by the defendant. The premises were occupied and used by W. C. and Lawrence Kennedy (sometimes referred to herein as Kennedy Bros.). What the arrangement between the owners and Kennedy Bros. was, for the farm operation, does not appear from the record nor is it particularly material. It can readily be inferred that in the operation of the farm Kennedy Bros. were acting for all of the owners.

We find nothing in the record to show that either Helen K. Roller or F. Roberta Hladik (the two sisters) had anything to do with the control or management of the farm or the wiring of the various buildings. Whatever was done in respect to the wiring was done by the Kennedy Bros.

In directing a verdict the court stated that its ruling was based upon the failure of plaintiffs to sustain the burden of proof that the defendant was negligent as charged and that said negligence, if any, was the proximate cause of the fire and that plaintiffs were free from negligence contributing to the injury. This brings us to the question: were plaintiffs guilty of contributory negligence?

Defendant alleges that the wiring in the barn at or near where the fire started was not as provided in certain wiring codes but was defective in that the three wires were spliced and put together in a defective manner. Most of the wiring had been in for years. Lawrence Kennedy put in some of the barn wiring in 1947. He testified that while in the Navy he had considerable experience in radar operation and matters connected with electricity; that when he did the work he used standard materials and completed the splicing of the wires and then used waterproof insulation so as to make a cable and put it in and through the metal conduit and fastened it securely in place; that it had worked perfectly until June 18, 1949, just after the silo was completed. Following the testimony of Lawrence Kennedy as to the manner and method of splicing the wires as they left the conduit on the inside of the east

end of the barn, the plaintiffs had a witness, Maxon P. Roller, husband of Helen K. Roller, one of the plaintiffs herein. He testified that for the past six years he was an electrical engineer for the Iowa-Illinois Gas & Electric Company; that he was trained as an electrical engineer at the University of Iowa and graduated therefrom in 1937; that since then he has practiced in electrical matters; that he has worked for the Rock Island Railroad; with the General Electric Company; one summer for the United Light & Power Company. There can be little question as to his qualifications. He testified that on a number of occasions he visited the farm and observed the wiring connected with the various buildings. Defendant claimed that Kennedy, in splicing the wires and cable at the east end of the barn, was negligent in the splicing of the three wires; that instead of splicing, junction boxes with fuses should have been used. Speaking of such matter and of the splicing of the wires he said:

"I have had experience in splicing wires carrying electricity without the use of junction boxes. There are many open splices in our power plants, with no boxes around them. I would say such splices are safe if well-made; that if they are not disturbed they should be perfectly safe. We have found them that way."

Further, he testified that he had examined the wiring in the haymow of the barn and saw the cable on the plate. There was some talk with the Kennedy Bros. about the wiring. He said: "I did not suggest any changes in that layout to make it any safer. * * * But I would not have changed it on account of its own condition, or from a safety angle."

In the splicing of the wires and cable and the manner of weatherproofing it, which defendant also claimed was negligence, the witness said:

"I think it would take substantially longer than a year and a half or two years for the safety factor to come into play. From having seen that layout as it was, and assuming it was installed within the last year and a half or two years, I think that weatherproof wire and the whole installation would have stood up a good many years if it hadn't been disturbed."

This witness was of the opinion that the wiring in question was neither hazardous nor defective unless it was disturbed. He stated, in effect, that damaging the insulation on the cable could have caused the fire.

The effect of the ruling of the court was that plaintiffs had not shown freedom from contributory negligence. We are unable to agree with the trial court in so holding. The splicing of the wire in the barn complained of by defendant had worked for several years without any trouble. Lawrence Kennedy, with considerable experience in electricity, considered it safe. When we add to this the testimony of witness Roller, one with wide experience in electrical matters, who had seen the wiring and examined it, we do not think that it can be said as a matter of law that plaintiffs or any of them were guilty of contributory negligence. What negligence consists of is a fact question, and, as a general rule, if there is any question as to its existence it becomes a jury question.

Whether or not the plaintiffs were guilty of contributory negligence under the record was a question of fact for the jury. It is hardly necessary to cite authority in support of this rule. We call attention to the following: Barnes v. Barnett, 184 Iowa 936, 169 N.W. 365; Hines v. Chicago, M. & St. P. R. Co., 196 Iowa 109, 194 N.W. 188; Huffman v. King, 222 Iowa 150, 268 N.W. 144; Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291.

We hold that it cannot be said as a matter of law the plaintiffs, or any of them, were guilty of contributory negligence.

Because of the errors the case is reversed and remanded.— Reversed and remanded.

OLIVER, C. J., and BLISS, GARFIELD, HAYS, MULRONEY, and WENNERSTRUM, JJ., concur.