MAGDALEN HACKMAN, administratrix of estate of CLEM HACKMAN, appellee, v. DONALD BECKWITH et al., appellants.

No. 48484.

(Reported in 64 N.W.2d 275)

MAY 4, 1954.

Donohue & Wilkins, of New Hampton, for appellants.

Zastrow, Noah & Smith, of Charles City, for appellee.

THOMPSON, J.—On November 20, 1952, plaintiff's decedent, Clem Hackman, was employed as a truck driver by the Diamond Transportation System, Inc. He was forty-five years of age, in good health, and had a life expectancy of 25.21 years. In the late afternoon of the date in question he drove a semitrailer outfit belonging to his employer, loaded with four farm tractors, eastward from Charles City on Highway No. 18. The truck and tractor combined weighed about 37,000 pounds, and were about forty-five feet in length. About eight miles east of Charles City the highway crosses the tracks of the Milwaukee railroad on a viaduct. On this viaduct he met a ton and one-half Chev-- rolet truck, loaded with beer cases and containers and perhaps some other merchandise, owned by defendant Capital Tobacco Corporation and driven by defendant Donald Beckwith. This truck was proceeding west. It was twenty feet long, and weighed, empty, about 12,000 pounds. It had a heavy box, eight by twelve, and seven feet high, built on the rear of the chassis for the purpose of containing the merchandise being transported.

A collision occurred on the viaduct between the two trucks, resulting in serious injuries to plaintiff's decedent from which he died nine days later without regaining consciousness. This action was brought by the administratrix of his estate. Other

facts, many of which are quite material, will be set out in the various divisions of the opinion as they become pertinent.

I. Defendants-appellants' first assignment of error raises the proposition that the court was in error in refusing to direct a verdict for them at the close of all the testimony and in denying their motion for judgment notwithstanding the verdict. The only direct evidence in the case was furnished by the driver of appellant's truck, Donald Beckwith. Each driver was alone in his vehicle at the time of the collision. No other witness claims to have seen the actual collision, and the court told the jury in its instructions that appellee relied upon circumstantial evidence. This means her case must be supported by evidence such as to make her theory of causation reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. Smith v. Darling & Co., 244 Iowa 133, 136, 56 N.W.2d 47, 49, and cases cited. But this means only the evidence must be such as to raise a jury question within the limits of the foregoing rule; it need not be conclusive. Smith v. Darling & Co., supra. It is of course so well established as to require no citation of authority that we must accept the evidence in its construction most favorable to the plaintiff. Ordinarily, disputed questions of fact from which reasonable minds might draw varying conclusions are for the determination of the jury. Roller v. Independent Silo Co., 242 Iowa 1277, 1282, 49 N.W.2d 838.

It therefore becomes important to consider the evidence in more detail. The viaduct upon which the collision occurred is twenty-four feet wide, with a sixteen-inch curb on each side, restricting the actual width available for vehicles to twenty-one feet and four inches. The Diamond truck came to rest after the collision in about the center of the viaduct east and west, with all of its wheels on the right-hand side against the south curb. This means it was as far to the right of its right-hand side of the road as it was possible for it to get. The appellants' truck was about one hundred twelve feet farther to the west, just off the west end of the viaduct, slanting diagonally to the northwest across the highway with its left rear wheels on or slightly across the center line of the highway and its front end on the shoulder

on its right-hand side. Further facts shown in evidence which were either disputed or not conceded by the appellants were that there was a series of scuff marks along the south curb immediately at the rear of the Diamond truck, extending back some fifty-six feet, from which the deduction might properly be made that the truck had been driven so close to the curb on its right-hand side as to rub against it. The tires on its right-hand side also showed abrasions. The rear wheels of the tractor on this combination were torn entirely loose from the vehicle, being driven back under the tank. The front end of the tractor was down on the pavement. It is urged from this the truck, weighing as it did some 37,000 pounds, could have moved only a slight distance after the crash, and that the probabilities are strong it could not have been across the center line at the time of the collision and then been moved back to its resting place with its entire length of forty-five feet snug against the curb on its right-hand side.

Certain marks were also testified to by plaintiff's witness Ingram. This evidence showed that they ran from a point on the south side of the roadway, and somewhat east of the final resting place of the Diamond truck, to the rear wheels of the defendants' truck. The collision occurred about 5:15 p.m., and at that time of the year dusk was falling. While the weather was clear, the evidence shows there was some moisture on the pavement, caused by frost or dew, and in this moisture the witness Ingram testified he saw the tracks leading from a point which would have been on appellants' left-hand side to the rear wheels of their truck as it finally rested at the west end of the viaduct.

■■ These tire tracks, the respective weights of the two trucks, the fact that the outfit driven by the plaintiff's decedent was a combined unit, which would make it most difficult to drive both the tractor and trailer to the right after the collision, so that they would end in a straight line against the curb, and the nature of the damage sustained by the respective vehicles, we think clearly made a jury question, both upon the issues of defendants' negligence and of plaintiff's contributory negligence. It was not necessary for appellee to negative every possible

theory or conceivable hypothesis which might be devised to account for decedent's injury. Hayes v. Stunkard, 233 Iowa 582, 587, 588, 10 N.W.2d 19, and cases cited. The appellants argue ably and ingeniously that the distances shown, the place of the debris upon the pavement immediately after the accident, and many other details negative appellee's showing to the point where it vanishes, and a peremptory verdict should have been returned for them. As to the debris, we note the testimony of Sheriff K. J. Daly, who said that before some of the pictures, showing most of the debris from appellants' truck on its right-hand or the north side of the road, were taken, the south side had been cleaned off so that traffic might move through. When he first observed the scene, before anything in the way of refuse had been moved, it was strung along the way from the rear of the Diamond truck to the rear of the Capital Tobacco truck; about as much on one side as on the other. This seems to strengthen rather than to weaken appellee's case. Practically all the debris came from appellants' truck, which some evidence shows careened on down the road from the point of collision to its final resting place. In any event, the deductions to be made from the positions of the vehicles as they come to rest after an accident, the tracks found on the roadway, and the location of dirt and debris from collisions, are ordinarily for the jury. Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 55 N.W.2d 528. The appellants have furnished us with a quotation from Shafer v. State, 171 Md. 506, 509, 189 A. 273, 274, which we think appropriate here: "Reliance upon such evidence [marks on the highway] alone for judicial determination of movements leading to a collision * * * is beset with dangers, but there would seem to be no room for doubt that in some cases it might amount to proof of negligence." We think this is such a case, particularly when there is much other substantial evidence pointing in the same direction. We stress the word "might" in the foregoing quotation; whether it does amount to such proof is for the jury to say; we hold no more than that.

II. Appellants' next complaint is of the action of the trial court in instructing on the no-eyewitness rule. It is contended that the evidence did not warrant an application of the

rule, and further that the instruction was erroneous as a matter of law even if the rule was properly in the case.

The only possible eyewitness to the accident and the events immediately preceding it was the defendant driver, Donald Beckwith. The substance of his testimony is this: "I come on around and made my swing and as I was over the viaduct I looked and here was a tractor coming and I swerved to the right. There was one impact and it just seemed like a second and there was a second one and I don't know what happened. * * * It appeared to me like he was over the black line and I made a swerve to try to avoid the collision."

 This evidence was not sufficient to remove the no-eyewitness rule from the case. The court properly submitted the matter to the jury to find whether there was in fact an eyewitness. The facts shown by Beckwith's testimony are no stronger, if as strong, in favor of appellants' contention that there was no occasion for the application of the rule than were those in Hayes v. Stunkard, supra; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12, and Riedesel v. Koch, 241 Iowa 1313, 45 N.W.2d 225. In each of these cases we held the question—whether there was an eyewitness—was properly submitted to the jury. It is evident in the case at bar Beckwith did not see, or at least did not so testify he saw, the decedent at all times material. His observation was a most fleeting one and was confined to the position of the vehicle driven by plaintiff an instant before the crash. If we grant, as a majority of this court held in Rickabaugh v. Wabash Railroad Co., 242 Iowa 746, 44 N.W.2d 659, that an eyewitness who observes the course and operation of a motor vehicle immediately before an accident in which it is involved also observes the conduct of the driver and so his testimony makes the no-eyewitness rule inapplicable, we still may not eliminate the rule here. In Hittle v. Jones, 217 Iowa 598, 601, 250 N.W. 689, 691, we said: "Nevertheless, if the witnesses who attempt to describe decedent's actions in a case of this kind did not see him during all the material moments of his actions, the inference of due care may be drawn under the rule relating to the instinct of self-preservation."

 The instruction given by the court on this point seems to have been identical in substance and almost in actual wording

with that given in Azeltine v. Lutterman, 218 Iowa 675, 682, 683, 254 N.W. 854, 858. The defendants complain the court failed to clearly instruct the jury the inference under the rule was to be considered only in connection with the issue of plain-tiff's contributory negligence. The final paragraph of the instruction did exactly that. Further attack is made on the instruction because it is said the jury was not told the rule should not be applied if they found there was an eyewitness. The objection is hypercritical. We said in Azeltine v. Lutterman, supra, page 683: "Of course, it is elementary that such inference cannot be indulged in the event there are eyewitnesses to the occurrence or accident." We approved the instruction when given in the Azeltine case and we approve it in the case at bar.

III. The third error assigned by appellants consists of many criticisms of Instructions Nos. 4, 5, 6 and 7 given by the court, and its refusal to give certain requested instructions. It is impossible within the reasonable length of this opinion to discuss these matters in detail. They are largely hypercritical, and many of them are answered by reference to the long-established and thoroughly understood rule that instructions are to be read as a whole. Thus, it is charged the court failed to instruct properly as to the meaning of the terms "burden of proof", "preponderance of the evidence", and "proximate cause", in the fourth, fifth, sixth and seventh instructions and failed to give their application to the evidence. Instruction No. 12 advised the jury it must consider the instructions as a whole, and each instruction must be considered in harmony with and in the light of all others. Instruction No. 4 clearly and properly defined the terms set out and Instruction No. 14 gave their application to the case at hand. No more was required. Fagen Elevator v. Pfiester, 244 Iowa 633, 56 N.W.2d 577; Pestotnik v. Balliet, 233 Iowa 1047, 10 N.W.2d 99; Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291.

It is further said that in Instruction No. 6 the court instructed upon legal excuse, when there was no such issue in the case. Keller v. Dodds, 224 Iowa 935, 949, 950, 277 N.W. 467; Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N.W. 428, and other cases are cited upon the point that the giving of such an instruction when there is neither pleading nor proof of legal

excuse is reversible error. Passing the question whether Instruction No. 6 did in fact go into that matter, we find no proper exception taken which clearly advised the court of the complaint made. In addition, appellants' requested Instruction No. 6 was in substance and meaning identical with that given by the court to which objection is now made; and it is elementary a litigant cannot complain of error which he has invited or to which he has assented.

Again, appellants say the court erred in using the word "proximately" in stating the contributory negligence of the plaintiff's decedent which would bar recovery. The first sentence of Instruction No. 7 says: "By 'contributory negligence' is meant the negligence of the person injured which contributed in any way or in any degree in producing the injury complained of." At other points, however, the court used the words "directly or proximately" contributing in any degree to the injury. As is pointed out in Hamilton v. Boyd, 218 Iowa 885, 886, 256 N.W. 290, contributory negligence such as will bar a plaintiff's recovery need not be a proximate cause of the injuries; it is enough if the negligence contributes in any way or degree. But here the instruction was in the alternative; the jury was told that if the negligence was either direct or proximate it would be sufficient to require a finding for defendant. Stilson v. Ellis, 208 Iowa 1157, 1167, 225 N.W. 346, 351. We do not approve the use of the word "proximate" in connection with contributory negligence; but there was no prejudicial error in its use here. We find no merit in the matters urged at this point or in the refusal to give the requested instructions.

IV. The court in its Instruction No. 8 defined circumstantial evidence and told the jury appellee relied upon it. It then gave the rule set forth in Division I of this opinion, that when circumstantial evidence is relied upon plaintiff could prevail only if a preponderance of the evidence supported her theory so as to make it reasonably probable, not merely possible, and more probable than any other conclusion based upon the same facts and circumstances. The jury was then referred to Instruction No. 14, in which the court told them the necessary elements of appellee's case. Appellants now complain the court gave the jury an insufficient guide in applying the law; that if

it found it impossible to determine how the accident happened its verdict should be for the defendants. The instructions, read as a whole, made this clear, and the complaint lacks merit. We think the language of Justice Weaver in Law v. Bryant Asphaltic Paving Co., 175 Iowa 747, 753, 157 N.W. 175, 177, 7 A. L. R. 1189, is appropriate:

"It is probably true that no instruction or charge to a jury has ever been drawn with such perfect clearness and precision that an ingenious lawyer, in the seclusion and quiet of his office, with a dictionary at his elbow, cannot extract therefrom some legal heresy of more or less startling character. The real test of the meaning and effect of an instruction for the purpose of review by an appellate court ought to be, and we think is, the idea which the language objected to is fairly calculated to convey to the minds of jurors drawn from the ordinary walks of life; and the fact that, upon a minute, technical or hypercritical analysis, some other interpretation can be placed thereon, may be disregarded."

V. The negligence charged against appellants by the petition was found in four specifications: (1) Failure to yield one half of the traveled portion of the highway; (2) failure to keep a proper lookout and to observe plaintiff approaching; (3) failure of defendant driver to have the truck under control and on the right-hand side of the roadway upon approaching a curve; and (4) failure to drive the truck at a careful and prudent speed under the conditions then and there existing. Appellants' fifth assignment of error concerns the refusal of the court to sustain their motion to withdraw specifications Nos. 2, 3 and 4; and further that the court did not submit No. 3 as pleaded by plaintiff, but omitted therefrom the words "and on the right-hand side of the roadway" so that the specification as given by the court read: "that he failed to have his truck under control upon approaching a curve." As to this latter complaint, no exception was taken by defendants to Instruction No. 1, in which the court stated the issues, and we find nothing in the exceptions to Instruction No. 5, in which the court instructed on the specification just referred to, which

fairly calls the court's attention to the omission now stressed. We cannot consider it.

Our discussion in Division I is, in effect, a determination that there was sufficient evidence to warrant submission of the first specification of negligence above set out. It is appellants' contention this was the only specification which should have been submitted, if there was anything whatever for the jury to consider. This is a common argument, when a collision occurs between vehicles going in opposite directions. But we think it not necessarily sound. It may be there are no other grounds of negligence proven, as in Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 61 N.W.2d 696, relied upon by the defendants. But if the evidence fairly supports other grounds so that a jury question is engendered they should also be submitted.

Upon the question of alleged failure of the defendant driver to keep a proper lookout, we think it was properly submitted. Appellants concede in argument that "If we had direct testimony offered by the plaintiff that defendant, in approaching the decedent's vehicle, was driving over the black line, then, we admit, the instruction as to lookout would have been proper." We are given no reason why there should be a different rule when the plaintiff's evidence is circumstantial rather than direct, if it raises a jury question; and we think there is none. We again quote the driver Beckwith: "I come on around and made my swing [apparently around the curve leading to and upon the viaduct] and as I was over the viaduct I looked and here was a tractor coming and I swerved to the right. There was one impact and it seemed like a second and I don't know what happened."

In the Ehrhardt case, supra, the defendant driver testified he observed the other vehicle coming for one fourth of a mile and watched it all the time. Here the impression might be drawn from Beckwith's testimony that he saw the approaching truck only an instant before the collision; at best, his testimony was vague and furnished the court no basis for holding as a matter of law he kept a proper lookout. There was evidence for the jury to consider, circumstantial it is true, that defendants' vehicle was on its left-hand side. As said in Pazen v. Des Moines Transportation Co., 223 Iowa 23, 27, 28, 272 N.W. 126,

unless we are to presume it was driven there willfully, there arises a fair inference of failure to keep a proper lookout. Motorists do not ordinarily drive on the left in the face of a near approaching vehicle if they see it coming; and if they do not, the question of lookout may become a material one, proper for the jury's consideration.

Section 321.288, paragraph 3, Code of Iowa, 1950, provides the driver of a motor vehicle shall have it under control and shall reduce the speed to a reasonable and proper rate when approaching and traversing a curve. Section 321.285 is the general speed provision paraphrased in the court's statement of specification of negligence No. 4. The approach to the viaduct on which the accident occurred from the east is, as shown by the exhibits and the testimony of Beckwith, on a rather wide curve. The viaduct itself is somewhat curved. The application of the third specification of negligence to this situation is apparent. Beckwith's testimony has to some extent been set out above. In addition, he said, when asked as to his speed as he came on the viaduct: "Well, I may have picked up. I figure about forty-five." The condition of the vehicles after the crash has some bearing upon speed also, although it would not always be sufficient in itself to take this issue to the jury. But we think a speed of forty-five miles per hour, even though not beyond the statutory limit, under the circumstances here, might have been found excessive, under both the third and fourth specifications of negligence. The weight of the truck driven by Beckwith, the nature of the approach to the viaduct, the fact that it rises considerably above the level of the highway on each side so that the view of the opposite side is obscured, the condition of the pavement, and other elements shown in evidence support the submission of each of these specifications. See Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 33, 34, 55 N.W.2d 528, 530, 531.

VI. The appellee's witness Jenkins was permitted to testify to an experiment he made with a tractor-trailer outfit similar to the one driven by decedent. He said that, starting with the left wheels on the center line of the highway, it required seventy-five feet to bring it sufficiently to the right so it would be lined up against the curb on that side as was

decedent's vehicle immediately after the collision. The court took some part in interrogating the witness, apparently for the purpose of clarifying the matter in its own mind. To all of this the defendants excepted. Of this procedure, it is said: "It is a matter peculiarly within the discretion of the court * * *." 20 Am. Jur., Evidence, section 758. The same rule is elaborated in 20 Am. Jur., Evidence, section 759: "The scope of the subject matter of experiments which may be used as evidence is very wide. The use of such evidence * * * rests almost entirely with the trial judge." We find nothing here which shows an abuse of discretion. Nor was there error in the short examination of the witness through the few questions asked by the court. See Pothast v. Chicago Great Western Ry. Co., 110 Iowa 458, 462, 81 N.W. 693; State v. Eggleston, 201 Iowa 1, 2, 206 N.W. 281; and Cedar Rapids National Bank v. Carlson, 156 Iowa 343, 136 N.W. 659, 664, where we said (page 356 of 156 Iowa): "* * * he [the trial judge] has a perfect right to do so [examine witnesses] if he can thereby expedite the trial or assist the witness in giving his testimony and elicit the facts." The motion to withdraw the specifications Nos. 2, 3 and 4 was properly denied.

VII. Appellee's witness Ingram testified to certain marks on the pavement, which had some early evening dampness, which indicated the defendants' truck had been on the south or left-hand side of the pavement prior to the collision. The witness said these marks began about seventy-five feet east of the final location of the Diamond truck and could be followed directly to the rear wheels of the Capital truck. Other witnesses spoke of the damp condition of the pavement so that tire tracks could be seen, although no one else placed them east of the probable scene of the collision. Appellants complain of the admission of the testimony of Ingram, saying it was indefinite and much of it in response to leading questions. We find it sufficiently definite. It has been often held that evidence of tire tracks, skid marks, "burns" and other marks on the paving following an accident is admissible if it fairly tends to throw some light on what actually happened. Thornbury v. Maley, 242 Iowa 70, 77, 78, 45 N.W.2d 576, 581; Brady v. McQuown, 241 Iowa 34, 37, 38, 40 N.W.2d 25; McKeever v.

Batcheler, 219 Iowa 93, 99, 257 N.W. 567. A foundation must be laid by showing conditions were the same when the tracks were observed as at the time of the accident, and there must be identification of the marks with the automobile involved. Ingram was a farmer living about one hundred rods from the scene of the collision. He heard the noise, jumped into his pickup truck and hastened to the viaduct, being the first to arrive. We think his testimony meets the requirements of the foregoing rule. As to rulings on objections to leading questions, we have repeatedly held the trial court has a considerable discretion in admitting or excluding answers thereto, and we find nothing here so objectionable that we can say the court abused its discretion. There must be a clear showing of such abuse to justify a reversal. State v. Wheelock, 218 Iowa 178, 189, 254 N.W. 313; Withey v. Fowler Co., 164 Iowa 377, 382, 145 N.W. 923, 925.

VIII. The witness Newton testified that he arrived at the scene of the accident shortly after five o'clock, when only Beckwith and one other man were present, and Beckwith was trying to get Hackman out of the cab of the Diamond truck, and he heard Beckwith say four or five times that he "didn't know what happened." This was admitted over objection, the trial court holding it was part of the res gestae. The court later told the jury in its Instruction No. 15 if it found plaintiff entitled to recover against Beckwith its verdict should also be against the defendant Capital Tobacco Corporation; and it submitted a form of verdict accordingly. Appellants now complain that the statements of Beckwith were not part of the res gestae, should not have been admitted against the Capital Corporation, and the court should have submitted separate forms of verdict against each defendant. In State v. Berry, 241 Iowa 211, 215, 216, 217, 40 N.W.2d 480, 483, Justice Smith made a somewhat exhaustive analysis of the res gestae rule. The matter was also given extensive consideration in Skalla v. Daeges, 234 Iowa 1260, 1281, 1282, 1283, 15 N.W.2d 638. The authorities were reviewed and the proper rule announced in these two cases, and it would serve no good purpose to elaborate them again. In State v. Berry, supra, we held the essential considerations to

constitute declarations a part of the res gestae are "spontaneity and such closeness of connection with the transaction as to exclude any presumption of fabrication * * *." Applying this test here, the soundness of the trial court's conclusion becomes apparent. The statements made by Beckwith as testified to by Newton must have come within a very few minutes after the crash. He was attempting to rescue Hackman from the cab of his truck, where he was pinned by the collision. The conclusion that Beckwith was still under the influence of the excitement of the collision and had no opportunity to fabricate an account of what happened seems inescapable.

Appellants further urge, however, that the statement made by Beckwith does not purport to be an account of what happened; and it is urged such a statement must afford a reasonable explanation of the transaction. We doubt it is seriously contended that no statement can be admitted as part of the res gestae unless it gives a full and detailed story of the occurrence. The very fact that it must be made under such circumstances as to negative any thought of fabrication, reasoned excuse or evasion of consequences demonstrates it need not be a full explanation. Laboring under the excitement of an unusual occurrence it would be strange indeed if a participant paused to give complete details. Statements which are made as part of the res gestae are usually fragmentary, and it is sufficient if they have some bearing on the transaction. In Roushar v. Dixon, 231 Iowa 993, 996, 997, 2 N.W.2d 660, 662, this court held statements in the form of inquiries as to whether the witness thought "they would hang him" or "Doctor, do you think they will put me in jail?" to be part of the res gestae. It may also be noted that if, as appellants urge, Beckwith's statement had no bearing on the manner of the happening, no prejudicial error was committed in receiving it. But we think it was sufficiently connected with the event to render it admissible. We have held that where statements of the driver of a motor vehicle involved in an accident are made as part of the res gestae, they are admissible also against the owner and are substantive evidence. Skalla v. Daeges, supra, at page 1282 of 234 Iowa, and cases there cited.

IX. Perhaps the most troublesome proposition urged by the appellants is that the verdict of the jury was not sup-

ported by the evidence and was so excessive as to indicate passion and prejudice. The verdict was in the sum of $26,938.65. The court instructed the jury if it found for plaintiff it might allow medical, hospital and nursing bills in an amount not exceeding $603.65; interest on the funeral expense, which expense the evidence showed to have been $1534.13, for such period of time as it found this cost to have been prematurely incurred; and the present value of the net estate which it found the decedent would have saved and accumulated from the time of his death if he had lived the normal term of his life. It is not contended the court did not give the jury the proper measure of damages; but it is strongly urged the amount found by the jury was so far in excess of anything justified by the record that passion and prejudice appear therefrom. In argument the parties agree that, after allowing the medical bills and interest on the funeral expense, there remained in the verdict the sum of $25,100 as the present worth of the net estate which would have been accumulated.

The evidence shows, in addition to the age of the decedent, that he was married, had two children—a daughter twenty-one and a son eighteen years of age—was in good health and physical condition, and had earned an average of approximately $5000 per year for the five years immediately preceding the fatal accident. His widow testified, "I own my own home in Charles City." D. H. Dudley, a banker at Ionia, testified he had known decedent for eleven years; that he formerly lived on a farm near Ionia. Mr. Dudley had had business dealings with him, and his credit was good. Decedent was reliable, and "I would say he made money and was careful of his business transactions." There is no evidence of what, if any, savings decedent had made nor of any property he owned.

We have said repeatedly a comparison of verdicts in other cases is of little value in determining such questions as the one before us here. Jettre v. Healy, 245 Iowa 294, 302, 60 N.W.2d 541, 546; Dunham v. Des Moines Railway Co., 240 Iowa 421, 35 N.W.2d 578. It is also thoroughly established the amount to be allowed is primarily a question for the jury, and an appellate court should not interfere unless it clearly appears the

verdict was prompted by passion and prejudice or the jury has disregarded the evidence or the instructions of the court. Jettre v. Healy, supra, at page 302 of 245 Iowa, page 546 of 60 N.W.2d; DeToskey v. Ruan Transport Corp., 241 Iowa 45, 48, 49, 40 N.W.2d 4, 17 A. L. R.2d 826. Many other cases might be cited in support of this elementary principle without adding to the sum total of knowledge or authority already available to the legal profession. For a thorough analysis, with authorities, see Elings v. Ted McGrevey, Inc., 243 Iowa 815, 821, 822, 53 N.W.2d 882.

The DeToskey case, supra, is, however, factually quite illuminating upon the question before us. Here a locomotive fireman sixty-one years of age, with a life expectancy of 13.47 years, had suffered what was determined to be a wrongful death. A recovery by his estate in the sum of $23,325 was upheld. It appeared he had reared and given a high school education to four children, all of whom were grown to maturity. He was industrious, of good habits, had earned $4409.40 in the year preceding his death, had savings in cash and bonds of about $1000, and paid taxes on a home. As here, it did not appear he owned or had purchased the home. Except for the item of savings his situation was very similar to that of Hackman in the instant case. In the DeToskey case we commented upon the much diminished purchasing power of the dollar, as we did also in Dunham v. Des Moines Railway Co., supra, Dedman v. McKinley, 238 Iowa 886, 29 N.W.2d 337, and Waterloo Savings Bank, Admr. v. Waterloo, Cedar Falls & Northern Railroad, 244 Iowa 1364, 1376, 60 N.W.2d 572, 579. There is of course some force to the argument of appellants that by the same token the cost of living has risen by leaps and bounds, so it is much more difficult for even the most thrifty to save and accumulate.

In Dunham v. Des Moines Railway Co., supra, we reversed the trial court which had held a verdict of $20,000 for the estate of a truck driver thirty-three years of age, with an expectancy of thirty-four years, to be excessive. In Jettre v. Healy, supra, we upheld a verdict of like amount for the estate of a truck driver thirty years of age. There was in the latter case a showing of certain facts which led two of the Justices to express

the opinion under these circumstances the amount allowed was excessive; but the decision is no less a precedent because arrived at by a majority instead of a unanimous court.

Our problem comes to this: was the finding of the jury so excessive we must find passion and prejudice, as appellants contend? In the light of our previous pronouncements, particularly DeToskey v. Ruan Transport Corp., where we held $23,325 not excessive for the estate of a decedent with a life expectancy of 13.47 years as against Hackman's expectancy of 25.21 years, and with somewhat smaller earnings than Hackman had, we are unable to hold as appellants think we should. The allowance to plaintiff is substantial, but we find nothing to show it resulted from passion and prejudice.

Appellants do not argue that we should reduce the verdict, in the absence of a finding of passion and prejudice. The court has the undoubted power to so act, however, in a proper case. Elings v. Ted McGrevey, Inc., supra, at page 822 of 243 Iowa. We do not find occasion for the exercise of this power here. In Booth v. General Mills, Inc., 243 Iowa 206, 210, 49 N.W.2d 561, cited by appellants, we found the verdict awarded appeared to be the full amount of the decedent's prospective earnings for his full expectancy and granted an alternative prayer for reduction. The case is not in point on its facts.

The contentions made by appellants are many and we have considered them in detail without finding reversible error. It has not been possible to discuss all of them within the reasonable length of an opinion, which we have devoted to the major points raised by the litigants.—Affirmed.

All JUSTICES concur.