RUBY ARTHUR, Appellee, v. MARBLE ROCK CONSOLIDATED SCHOOL DISTRICT et al., Appellants.

No. 40056.

DECEMBER 13, 1929.

*Carl F. Jordan*, for appellants.

*R. W. Zastrow*, for appellee.

KINDIG, J.—The question presented for consideration is a narrow one. It is, Was claimant's husband, Harry Arthur, at the time of his death, the employee of the Marble Rock Consolidated School District, or was he an independent contractor, under an agreement with the school district, to furnish transportation for school children?

During the times herein considered, the appellant Marble Rock Consolidated School District was duly organized under the laws of this state. As such,

it conducted a public school in the town of Marble Rock. For the purpose of complying with the Workmen's Compensation Act, the school district entered into an agreement with the appellant New York Indemnity Company for compensation insurance. Mr. Arthur, claimant's deceased husband, while under contract with the school district to carry children to and from school, was injured by a Rock Island train on March 8, 1928, while operating his school transportation vehicle over the railroad tracks. Thereafter, on March 10th, Mr. Arthur died. Surviving him were his widow, the claimant, and two children. One child, Virginia May, is 11 years old, while Lucille, the other, is 9. Claim for compensation, as previously stated, is here made by the widow. In order for her to recover therefor, there must be a relationship of employer and employee under the Workmen's Compensation Act, as distinguished from that of employer and independent contractor. Under the heading ''Definitions,'' the 1927 Code provides:

''Sec. 1421. In this and Chapters 71 and 72, unless the context otherwise requires, the following definitions of terms shall prevail:

''1. 'Employer' includes and applies to any person, firm, association, or corporation, state, county, municipal corporation, city under special charter and under commission form of government, school district, and the legal representatives of a deceased employer.

''2. 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified.

''3. The following persons shall not be deemed 'workmen' or 'employees:' * * *

''c. An independent contractor.''

Apparently the legislature omitted to say what it meant by the term ''independent contractor.'' About this omission we said in *In re Estate of Amond,* 203 Iowa 306:

''The statutes of this state do not, as do the statutes in some other jurisdictions, define an independent contractor; * * * The

meaning of the term 'independent contractor' has been many times judicially determined.''

Hence it is essential to consult the adjudicated cases for a criterion by which the present controversy may be decided. No hard and fast rule can be made. Each case must be determined upon its own facts. *Franks v. Carpenter*, 192 Iowa 1398. Therein it is declared:

"There is no absolute rule for determining whether, under a given state of facts, the one doing or having charge of the work is an independent contractor or an employee.''

Many tests, however, have been suggested. Of them, the following is most prominently mentioned: Does the employee contract to and accordingly accomplish the final result, as distin-guished from merely undertaking to furnish, and therefore only furnishing, the means by which the master does the work? *Pace v. Appanoose County*, 184 Iowa 498; *In re Estate of Amond* (203 Iowa 306), supra. Illustrative of this thought is the following quotation from *Pace v. Appanoose County*, supra:

"The test oftenest resorted to, in determining whether one is an employee or an independent contractor, is to ascertain whether the employee represents the master as to the result of the work, or only as to the means. If only as to the result, and he himself selects the means, he must be regarded as an independent contractor.''

Another standard by which this status may be measured is "the right to terminate the relationship at will, without involving liability for the breach of the contract.'' *In re Estate of Amond* (203 Iowa 306), supra. Again, consideration has been given to the control which one party exercises over the methods and details of the undertaking. *Norton v. Day Coal Co.*, 192 Iowa 160. With those rules and precedents as a guide, the problem presented by the case at bar is to be solved.

The claimant's husband and the school district operated under a written contract. So, from this instrument alone it is necessary to find whether the decedent was an employee or an

independent contractor. Facts and circumstances other than the contract itself are not material, under this record. Embraced within said contract are the following important provisions:

"This contract, made and entered into by and between R. B. Bullemer, president of the board of directors of the Consolidated School District of Marble Rock in Marion Township, Floyd County, Iowa, and Harry Arthur, of Marble Rock, Floyd County, Iowa.

"Said Harry Arthur covenants and agrees to transport the children of Route No. 4 to the Marble Rock School each day that school is in session during the school year beginning September 5th, 1927. Said Harry Arthur further agrees to comply with the following conditions:

"1. He will furnish truck and school board the body. (Describe method of transportation).

"2. He will furnish comfortable blankets and robes, sufficient for the best protection of the pupils while on the road.

"3. He will collect the pupils by driving over the route each morning as directed by the board, in time to convey the pupils to school so as to arrive at the school building not earlier than 8:30 o'clock A.M. or later than 9:10 A.M., waiting not longer than 3 minutes and blowing a whistle, or some other suitable signal at each house.

"4. He will return the pupils to their homes, leaving the schoolhouse at 3:45 P.M., or later, as the board may determine.

"5. He will personally drive and manage the vehicle, or provide a suitable driver satisfactory to the board, who will comply with all the conditions of this contract.

"6. He will refrain from the use of profane language in the presence of the pupils.

"7. He will not use tobacco in any form during the time he is conveying the pupils to and from school.

"8. He will avoid fast driving and racing with other vehicles and stop before crossing the railroad and be sure that no train is coming, and that it is safe and clear before attempting to cross.

"9. He will keep order among the pupils and report any improper conduct to the superintendent.

"10. He will not allow the school vehicles to be used for

any other purpose, and report to the superintendent any damage done.

"11. Should a driver frequently arrive at the schoolhouse late in the morning or be late to start to return the pupils to their homes, unless for unavoidable reasons, he shall be fined the sum of $............. for each failure.

"In consideration of the said services the said R. B. Bullemer, president of the board, in behalf of the Consolidated School District of Marble Rock hereby agrees to pay the said Harry Arthur the sum of $95.00 per month, excepting it is herein agreed that the board shall retain one half of the first month's wages until the close of the term of service of the said Harry Arthur, to insure the faithful performance of the terms of this contract. The board of directors reserve the right to make changes in regulations if necessary, or to terminate this contract at any time.

"The board reserves the right to change the route when they consider it necessary for the best interests of the patrons. In case length of route is increased $............. per month will be added for each mile added to the route. If the route is shortened $............. per month will be deducted for each mile taken from the route."

It was concluded by the industrial commissioner that the above and foregoing agreement gave rise to the relationship of employer and employee, rather than that of independent contractor.

"The duty of determining where the preponderance of evidence lies, under the records in cases of this kind, is the task imposed by statute upon" that official. *Jones v. Eppley Hotels Co.*, 208 Iowa 1281; *Flint v. City of Eldon*, 191 Iowa 845; *Hinrichs v. Davenport Locomotive Works*, 203 Iowa 1395.

There is confronting us here, however, the requirement that a legal conclusion be drawn from the language of the contract. As in *Norton v. Day Coal Co.* (192 Iowa 160), supra, here "the

 sole question now is whether we may say that there was no conflict, no room for the drawing of different inferences, and that, therefore, as matter of law, the finding of the commissioner is not sustained by the competent evidence.'' Our conclusion is that but one inference can be drawn. That is, claimant's husband was an independent contractor, rather than an employee. Basis for this result can be found in the instrument itself.

Preliminary to a discussion of said agreement, the statutes giving rise thereto should be noticed. Section 4179 of the 1927 Code provides:

''The board of every consolidated school corporation shall provide suitable transportation to and from school for every child of school age living within said corporation and more than a mile from such school, but the board shall not be required to cause the vehicle of transportation to leave any public highway to receive or discharge pupils, or to provide transportation for any pupil residing within the limits of any city, town, or village within which said school is situated.''

Again, Section 4182 of the same Code contains the following provisions:

''The school board of any school corporation maintaining a consolidated school shall contract with as many suitable persons as it deems necessary for the transportation of children of school age to and from school. Such contract shall be in writing and shall state the route, the length of time contracted for, the compensation to be allowed per week of five school days, or per month of four school weeks, and may provide that two weeks' salary be retained by the board pending full compliance therewith by the party contracted with, and shall always provide that any party or parties to said contract, and every person in charge of a vehicle conveying children to and from school, shall be at all time subject to any rules said board shall adopt for the protection of the children, or to govern the conduct of the person in charge of said conveyance.''

See, also, *Black v. Consolidated Ind. Sch. Dist.*, 206 Iowa 1386.

In conclusion, Section 4183 thereof declares:

"Any person driving, managing, or in charge of any vehicle used in transporting children to and from school, who shall be found guilty of violating any of the rules adopted by the board of said school for the guidance of such person shall be guilty of a misdemeanor, and for the first offense shall be fined not less than five dollars nor more than ten dollars, and for a subsequent offense shall be fined not less than 25 dollars nor more than 50 dollars and shall be dismissed from the service."

Armed with that statutory authority, the school board of Marble Rock Consolidated School District entered into the foregoing contract with Harry Arthur. According to such written undertaking, it is stipulated that the "said Harry Arthur covenants and agrees to transport the children of Route No. 4 * * *." Transportation, as distinguished from mere service, was thus magnified, and made of first importance in the contract. Thus it appears at the outset that the school board did not hire service, but rather, purchased transportation. Such conveyance was not made by the school board through Harry Arthur, as the district's driver or servant. Harry Arthur, under the contract, agreed to transport the children himself, for the consideration named. Three provisions in the agreement point unmistakably in that direction:

First. With the exception of the body, Harry Arthur furnished his own vehicle. He made the choice of the chassis. His selection could have been a Ford, a Cadillac, or something else. Likewise, Harry Arthur supplied the tires, the oil, and the gasoline. When doing this, he could buy cheap or expensive tires, high or low test gasoline, and oil of any quality. Methods and quality of repairs to the chassis were entirely under the supervision and direction of Harry Arthur himself. Supervision and control over these matters were not, in any event, to be exercised by the school board. They were interested in but one thing, and that was transportation. About one fourth of Harry Arthur's income was consumed in paying those operating expenses.

Second. Under the contract, Harry Arthur, and not the school board, was to furnish "comfortable blankets and robes sufficient for the protection of the pupils while on the road." These articles of comfort were not to be provided by the school

board. Claimant's intestate was to furnish them, in connection with the transportation. Those blankets and robes could be of fur, wool, cotton, or some other substance, so long as they were "comfortable and sufficient." Selection of the quality, style, make, and number was vested in Harry Arthur.

Third. A comparatively small amount of Harry Arthur's time each day was occupied in transporting the children. The interim between the morning and evening conveyances was his, for the pursuance of other occupations, if he so desired. Moreover, the school district did not require Harry Arthur to make the conveyance himself; for, under Provision 5 of the contract, another suitable driver, satisfactory to the board, could be substituted. In the event of such substitution, Mr. Arthur still fulfilled his agreement by transporting the children, and was paid the same as if he himself had driven the vehicle. Consequently, it is plain that the school district itself was not conveying the children, through Harry Arthur, as the driver. On the other hand, Arthur himself did the transporting, and this was accomplished whether he or the substitute actually drove the vehicle. Obviously, then, Harry Arthur was an independent contractor, and not an employee. *Pace v. Appanoose County* (184 Iowa 498), supra; *Ludlow v. Industrial Commission*, 65 Utah 168 (235 Pac. 884). See, also, *Norton v. Day Coal Co.* (192 Iowa 160), supra; *In re Estate of Amond* (203 Iowa 306), supra.

An argument is made by appellee upon the theory that the contract required when and where the pupils were to be taken to and from school; that the driver must refrain from the use of profane language and tobacco, avoid fast driving and racing, stop before crossing railroad tracks, make proper outlook at such place, keep order among the pupils, and report improper conduct. We said, in *Pace v. Appanoose County* (184 Iowa 498), supra, reading on page 509:

"The mere fact that the owner may have an overseer or architect to see that the work complies with the contract, or that the work is to be to the owner's satisfaction, does not change the character of the contract, if it meets the test stated."

Manifestly, a building contractor constructs according to the plans and specifications, and within the time allotted therefor. Yet he may be an independent contractor. So, in the case at

bar, Harry Arthur signed a contract, the very purpose of which was to transport children according to the methods and rules stated. Like the building contractor, Mr. Arthur performed according to "plans and specifications." Said rules and regulations were a part of the contract. But when meeting such specifications, Harry Arthur was an independent contractor, transporting the children to and from school. There is a difference, on the one hand, between performing a contract embodying certain conditions, and, on the other, rendering services under the supervision, control, and regulation of someone else. See *Pace v. Appanoose County* (184 Iowa 498), supra. Had Mr. Arthur operated his school bus in such a negligent way as to collide with another vehicle and injure an occupant thereof, the school district would not have been responsible therefor, because the claimant's intestate was not its servant, agent, or employee.

While it is true, as urged by appellee, the school district furnished the body for the vehicle, and reserved the right "to make changes in the regulations" and "terminate the contract at any time," nevertheless those elements in the contract do not constitute the school district the carrier, and Harry Arthur its mere employee. Although those elements of the agreement are important in the consideration before us, yet they are outweighed and overcome by other more prominent conditions and provisions. Basis is found in the Code for those stipulations contained in the contract regarding supervision, and, therefore, under the circumstances, such regulations amount to governmental control rather than the mere exercise of authority by a master over a servant. Analogous instances of governmental regulation of independent contractors may be found in national, state, and municipal control of steam railways, and in state and municipal supervision over the operation of street railways, motor bus carriers, taxicabs, etc. A careful analysis of the contract aforesaid plainly reveals the fact that the school district itself did not make the conveyance. Rather than so doing, the school district purchased transportation for the children from Harry Arthur.

Hence, because the agreement under the present record was

improperly interpreted, the judgment of the district court is reversed.—*Reversed.*

ALBERT, C. J., and STEVENS, FAVILLE, DE GRAFF, WAGNER, and GRIMM, JJ., concur.