OLE S. OLSON, Administrator, Appellee, v. PAUL CUSHMAN, Appellant.

No. 44057.

DECEMBER 14, 1937.

REHEARING DENIED APRIL 8, 1938.

Kindig, Faville & Mathews and H. E. Narey, for appellee.

Hal W. Byers, Cory & Sackett and McMartin, Herrick & Langdon, for appellant.

MITCHELL, J.—Ole S. Olson, administrator of the estate of his deceased son, commenced this action against Paul Cushman, who was the driver of a school bus under a written contract with the Consolidated School District of Lloyd Township, Dickinson County, Iowa, to recover damages for the death of his son. There was a trial to the jury, which returned a verdict for the administrator, and Cushman, being dissatisfied, has appealed.

I. Appellant complains that the court erred in overruling the motion for a directed verdict, because appellee failed to prove by sufficient competent evidence that any injury received by decedent was the proximate cause of his death.

We turn to the record to ascertain the facts.

Elmer Robert Olson was seventeen years of age and a student in the Terril, Iowa, high school. Paul Cushman had been engaged by the school district, under a written contract, to transport to and from the school the pupils who lived in the country, and on the morning of January 4, 1934, he proceeded as usual to pick up the children at their various residences. He was driving what is known as a Ford panel bus. The seats were arranged on each side and ran lengthwise; the driver sat in front, with his back to the occupants of the bus. There were windows at either side and at the back. Entrance was thru the front door on the right side. The children sat facing each other. On the morning of the accident all of the children of the regular route had been picked up and the bus was headed south on the north and south graveled road towards the school, traveling at a rate of about fifteen miles an hour. The road was level, with a ditch on each side three or four feet deep. The front part of the bus went into the ditch, where it turned over, coming to rest on its right side. Elmer Olson was sitting in the back end of the bus, on the left side, and was thrown over on top or against Albert Theesfeld, who was sitting on the right side. The children had no warning that the bus was about to tip over, and the exact manner in which they were thrown to the other side does not definitely appear in the record. There is testimony that Olson put his hand out as he was thrown over, and this no doubt would have been a natural thing to do. However, the record shows clearly that he collided with or was thrown against the boy sitting opposite him. The occupants were all mixed up and lying on the right side of the bus after it had

tipped over, and crawled out thru the left front door. Several were injured, including one little girl who had her arm broken. Olson and one of his companions walked towards the school to secure help. There is evidence that within thirty minutes after the accident Olson complained of a pain in the back of his head, indicating the region back of his left ear. A little later on one of his schoolmates noticed him holding the back of his neck. He remained at school that day. On returning home that evening he complained to his mother of a pain in the back of his neck and around the left ear, and she immediately applied home remedies, using liniment and hot towels. For approximately two weeks thereafter he attended school, but each day his mother treated him for the trouble complained of in his neck and back of his ear. This condition continued to grow worse and the pain and the soreness were more severe each day. On the 20th of January his father took him to Dr. Birney at Estherville, where the ear was treated, and he was told to return the next day. When he returned, the doctor placed him in the hospital, and on the 23d day of January the case was diagnosed as a middle ear infection with a mastoid involvement, and an operation was performed. Elmer Olson remained at the hospital until his death on the 14th of February.

The appellee called as his witnesses Drs. Rodawig and Scott, medical men of training and experience, who operate an efficient and modern hospital at Spirit Lake, who, in answer to hypothetical questions setting out the facts as developed in this case, testified that an infection in the inner ear could or might result from trauma or a blow. ''A bruise, without even a puncture or a rupture of the membrane itself, but just the bruise of the inner ear, that in itself could in time become sufficiently aggravated to go thru this period of incubation and create an infection in the inner ear; that is possible.'' In addition to this, there is the testimony of Dr. Birney, a doctor of years of experience and who had performed numerous mastoid operations, that in his judgment the probable cause of the mastoid condition which caused Elmer Olson's death was an injury received. True, there is medical evidence offered by appellant that that was not the cause of the death of this young man. All of the doctors testified that various causes may bring on mastoid trouble. The appellee then took up each of these various causes given by the medical men and offered evidence that Elmer Olson

on the morning of the accident was not afflicted with any of these things. Among other causes given by the medical men was that of a cold. There is some testimony that Elmer had a cold. However, there is the direct evidence of his mother and others who were with him during that period of time that he did not have a cold. Scarlet fever may bring on a mastoid condition. It is true that Elmer Olson had scarlet fever some eight or ten years prior to the date of the accident, but there is evidence that he had fully recovered from it. And there is medical testimony that, having recovered and having had scarlet fever a period of some eight or ten years prior to that time, that could not be the cause of the mastoid condition.

This record shows that Elmer was a fine, healthy young man, seventeen years of age, a member of the football squad, playing a part in the various activities of his school, not one to complain, and in fine physical condition on the morning of January 4, 1934.

■■■ In the case of Brownfield v. Chicago, R. I. & P. Ry. Co., 107 Iowa 254, at page 258, 77 N. W. 1038, 1039, this court said:

"When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result."

In Lunde v. Cudahy Packing Co., 139 Iowa 688, at pages 700, 701, 117 N. W. 1063, 1068, we find:

"Proximate cause is, under all ordinary circumstances, a question of fact; and, where it depends upon circumstances from which different minds might reasonably draw different conclusions, or where all the known facts point to the negligence of the defendant as the cause, the submission of the question to the jury affords no ground for assignment of error by such defendant. 29 Cyc. 632.

"Proof of proximate cause is subject to no more burdensome rule than is applied to the proof of any other essential fact in an ordinary law action. It must be established by a preponderance of the evidence, direct or circumstantial. If there be shown any facts bearing upon the question, and they

afford room for fair-minded men to conclude therefrom that one theory of the case is better supported than the other, the question cannot be properly withdrawn from the jury. * * * A cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known was the operative agency in bringing about such result."

In the case of Bonjour v. Iowa Tel. Co., 176 Iowa 63, at pages 72, 73, 155 N. W. 286, 290, this court said:

"To entitle him to a verdict, plaintiff is not required to negative all possible causes of his intestate's death other than defendant's negligence. Nor is he required to make his case beyond reasonable doubt. If he shows a cause which might have produced an accident in the way alleged, and that the accident complained of happened in that manner, 'it is to be presumed, in the absence of showing of other cause, that the one known was the operative agency in bringing it about.' "

In the late case of Buchanan v. Hurd Creamery Company, 215 Iowa 415, 246 N. W. 41, we quote from the syllabus the following:

"The question whether a certain negligent act was the moving or producing cause—the proximate cause—of an injury is properly submitted to the jury when the record contains evidence which establishes an act which could fairly be such proximate cause and contains no evidence tending to establish any other cause."

In the case at bar we find Elmer Olson physically fit on the morning that he entered the bus. Within twenty or thirty minutes after the accident he complained of a pain back of his left ear. A little later on he complained again. That evening he told his mother, and she applied the remedies known to her. From then on until the hour of his death he was being treated by his mother and the physicians. The medical testimony eliminated other probable causes of a mastoid condition. Clearly, in view of such a record, the question was for the jury and the court was right in submitting it.

II. Appellant contends that he was engaged in the

performance of a governmental function for and on behalf of an agent of the State and is not individually liable for any negligence in such performance. He relies upon the case of Hibbs v. Ind. School District, 218 Iowa 841, 251 N. W. 606.

The writer of this opinion does not agree with the rule laid down in that case, and his views are set out in a dissenting opinion in the case of Shirkey v. Keokuk County, 225 Iowa ..., 275 N. W. 706. However, regardless of the writer's views, the case of Hibbs v. Ind. School District, supra, is still the law of this State.

Paul Cushman was not an employee of the school district. He was an independent contractor. The contract that he had with the school district is set out in full. He was to furnish the motor bus; pay all expenses, both operating and repair; he was to collect the pupils at certain hours and to return late in the afternoon to take them to their homes; he was either to drive the bus himself or furnish a suitable driver. For this service of collecting and delivering the pupils he was to receive so much each month. While not so engaged he was at liberty to perform or do any other kind of work that he saw fit. The contract is almost identical with that involved in the case of Arthur v. Marble Rock Consolidated School District, 209 Iowa 280, 228 N. W. 70, 66 A. L. R. 718. In the Arthur case, 209 Iowa 280, at page 287, 228 N. W. 70, 72, 66 A. L. R. 718, this court said:

"Armed with that statutory authority, the school board of Marble Rock Consolidated School District entered into the foregoing contract with Harry Arthur. According to such written undertaking, it is stipulated that the 'said Harry Arthur covenants and agrees to transport the children of Route No. 4 * * * .' Transportation, as distinguished from mere service, was thus magnified, and made of first importance in the contract. Thus it appears at the outset that the school board did not hire service, but rather, purchased transportation. Such conveyance was not made by the school board through Harry Arthur, as the district's driver or servant. Harry Arthur, under the contract, agreed to transport the children himself, for the consideration named."

And on pages 288, 289, of 209 Iowa, 228 N. W. 70, 73, 66 A. L. R. 718, we find:

"An argument is made by appellee upon the theory that the contract required when and where the pupils were to be taken to and from school; that the driver must refrain from the use of profane language and tobacco, avoid fast driving and racing, stop before crossing railroad tracks, make proper outlook at such place, keep order among the pupils, and report improper conduct. We said, in Pace v. Appanoose County (184 Iowa 498), 168 N. W. 916, 919, supra, reading on page 509:

" 'The mere fact that the owner may have an overseer or architect to see that the work complies with the contract, or that the work is to be to the owner's satisfaction, does not change the character of the contract, if it meets the test stated.'

"Manifestly, a building contractor constructs according to the plans and specifications, and within the time allotted therefor. Yet he may be an independent contractor. So, in the case at bar, Harry Arthur signed a contract, the very purpose of which was to transport children according to the methods and rules stated. Like the building contractor, Mr. Arthur performed according to 'plans and specifications.' Said rules and regulations were a part of the contract. But when meeting such specifications, Harry Arthur was an independent contractor, transporting the children to and from school. There is a difference, on the one hand, between performing a contract embodying certain conditions, and, on the other, rendering services under the supervision, control, and regulation of someone else. See Pace v. Appanoose County (184 Iowa 498, 168 N. W. 916), supra. Had Mr. Arthur operated his school bus in such a negligent way as to collide with another vehicle and injure an occupant thereof, the school district would not have been responsible therefor, because the claimant's intestate was not its servant, agent, or employee."

In view of the rule laid down in the Arthur case, Paul Cushman was an independent contractor and not an employee of the school district, and was liable for his own negligence.

III. Appellant filed a motion to strike certain parts of appellee's original petition, which was sustained. Later appellee amended, and appellant filed a motion to strike certain parts of the petition as amended and set up among other grounds that a new cause of action was pleaded and that, more than two years having elapsed, it was barred by the statute of limitations, Code 1935, §11016.

It is the rule of this State, where an entirely new cause of action is pleaded after the statute of limitations has run, such new cause of action is barred. However, the situation here does not permit of the application of any such rule. Neither in the original petition nor in the amendment was there any allegation of specific negligence. In both was pleaded the general situation as to what happened and that the appellant was negligent.

■■■ The doctrine of res ipsa loquitur is a mere rule of evidence. It is true that where specific allegations of negligence are made, the rule of res ipsa loquitur does not apply. However, appellee did not allege any specific negligence and relied wholly upon the allegations of general negligence, and under such a situation the doctrine of res ipsa loquitur does apply.

To prove this beyond any question, that appellee relied upon general allegations of negligence, we find this contained in plaintiff's petition:

"Plaintiff is unable to set forth any specific acts of negligence on the part of the defendant which caused him to drive said bus from the highway into the ditch, and plaintiff relies in this action upon his allegation of general negligence and carelessness under the rule of res ipsa loquitur."

■■■ IV. Appellant complains about certain instructions given by the court. We have examined all of them and have come to the same conclusion the distinguished trial court came to when, in passing upon the motion for new trial, he said:

"Counsel have applied their legal microscope to the instructions, discovering and, may I say, magnifying verbal inaccuracies therein. The trial court has many difficulties in trying to phrase instructions in automobile accident cases. It is largely a matter of phrasing. Generally speaking, the law of a given case is not particularly difficult, but to explain it so the jury can get it is a fine art. The temptation is to try to make each statement of the law complete, and that means linking together of many clauses, each qualifying and limiting the basic idea to be expressed, so as to cover in detail all the law on that particular subject."

The instructions in the case are to be considered as a whole. To pick out a single paragraph, or a single instruction and to complain bitterly as to that, without considering the entire in-

struction, is too often done. To read instructions thru the magnifying eye of a technical lawyer will not justify reversal of cases. The instructions in this case, taken as a whole, are correct.

Some other objections are raised, all of which have been given careful consideration. We find no error.

It necessarily follows that the case must be, and it is hereby, affirmed.—Affirmed.

HAMILTON, C. J., and ANDERSON, KINTZINGER, DONEGAN, SAGER, and STIGER, JJ., concur.