110 So.2d 156 (1959)
Mrs. Claudia Beth Williams STEPHENS, Plaintiff-Appellee,
v.
NATCHITOCHES PARISH SCHOOL BOARD, Defendant-Appellant.
No. 8950.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1959.
Rehearing Denied April 3, 1959.
Certiorari Granted April 29, 1959.
*157 Gahagan & Gahagan, Natchitoches, H. L. Hughes, Jack P. F. Gremillion, Baton Rouge, for appellant.
*158 Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, Arthur C. Watson, Natchitoches, for appellee.
HARDY, Judge.
This is an action in tort which was instituted by plaintiff, Mrs. Claudia Beth Williams Stephens, widow of Searcy B. Stephens, seeking the recovery of damages for the alleged wrongful death of her said husband, individually and for the use and benefit of her minor daughter, Burt Devone Stephens, the only living child born of the marriage between plaintiff and her deceased husband. Defendant is the Natchitoches Parish School Board which brings this appeal from a judgment in favor of plaintiff. The appeal has been answered by plaintiff who seeks an increase in the amount of damages awarded.
This suit was considered by this court on plaintiff's appeal from a judgment sustaining an exception of no right and no cause of action filed by defendant. After hearing on this appeal there was judgment overruling defendant's exception and further judgment overruling pleas of unconstitutionality and prescription, which had also been interposed by defendant, and remanding the case for trial on the merits, La.App., 96 So.2d 396.
The accident which is the basis of this suit occurred at or near the hour of 7:00 A.M. on February 11, 1955, at the intersection of Louisiana Highway 20 (now Louisiana Highway 1) with what is known as the Marco Road, a graveled highway at the time of the occurrence of the accident, which makes a "T" intersection with the highway from the north. The decedent, Stephens, was driving his 1951 Chevrolet Coupe west on Highway 20 and collided with a 1953 Ford school bus driven by one Sheppard Morris, a Negro school bus operator, allegedly employed by the defendant and acting within the scope and course of his employment at the time, which vehicle was allegedly engaged in making a left turn from its eastbound course on Highway 20 into the intersection of the Marco Road.
Plaintiff alleged that Morris attempted to make a left turn immediately in the path of the approaching Stephens' automobile, which action constituted the negligence which was the sole and proximate cause of the collision. Defendant asserts that the decedent, Stephens, was guilty of such gross negligence as to bar plaintiff's right to recovery of damages, and contends, in support of this conclusion, that the bus was at a complete stop at the time it was struck by the Stephens car, which was not under the proper control of the driver and which was moving at "such a rapid rate of speed that he was unable to avoid the collision."
The drivers of the respective vehicles involved were the only eye witnesses to the accident, and the testimony of neither was available on trial of the case, Stephens having died within a few minutes after the collision and Morris having been killed in another automobile accident, which occurred some months later and long prior to trial of this case.
In support of the charges of negligence against Morris, plaintiff relies, of necessity, upon evidence of the physical circumstances surrounding the occurrence of the accident, which circumstances are specifically urged as having established the facts; (1) that the front of the bus had moved across the center line of the highway into the path of the approaching Stephens' car; (2) that the bus was in motion in the course of making the dangerous left turn; and (3) that the windshield of the bus was obscured by dirt and frost to such a degree as to seriously interfere with the driver's vision of approaching traffic, which latter fact is asserted in support of the conclusion that the driver did not see, though he could and should have seen, the approach of the Stephens' car.
The comments made by the district judge upon the facts and conclusions drawn *159 therefrom, as set forth in his written opinion, are quoted as follows:
"In considering the facts as shown by the evidence, one fact seems inescapable and that is that the school bus driver drove his bus into his left lane of traffic in front of oncoming traffic, which in this case was the Stephens car.
"It is here that the accident occurred at the intersection of the Marco road with Highway One and also that a rather severe hill lies a short distance south of the intersection. These factors of necessity must be considered in attempting to arrive at the proximate cause of the accident. Also there must be considered the windshield on the bus that was partially covered with mud and the effect of the early morning sun shining on this windshield as affecting the vision of the bus driver. And lastly, there must be considered the physical evidence surrounding the accident, made even more important because of an almost complete lack of eye witnesses. These physical facts show the point of impact to have been on the Stephens side of the road and further that there was no indication that Stephens had ever put on his brakes.
"The only logical conclusion that this Court can draw from this is that the bus turned so rapidly and so close in front of him that he had no time to try to do anything about it.
"Thus it is the opinion of this Court that the negligence of the bus driver Sheppard Morris was the sole and proximate cause of the accident and that defendant is liable."
Our examination of the record has led us to a resolution of the facts and a consequent conclusion which are in complete agreement with those found by the district judge, as above set forth. However, in deference to the sincere argument advanced by counsel for defendant, we think it desirable to elaborate some of the material details of the evidence reflected by the somewhat voluminous record.
The Trooper, Dowden, who reached the scene of the accident shortly after its occurrence and before either of the vehicles involved had been moved, testified that the front of the bus was several feet across, that is, to the north, of the center line of the highway. There is considerable conflict in the testimony of the witnesses for the parties litigant on this point, but the only real variance which we find relates to the distance by which the bus had encroached into the lane of travel of the decedent, Stephens. The estimates of this distance by the several witnesses who testified on the point varies from, "on or just over" the center line, to, "a number of feet." We think an attempt to fix any exact measurement of this encroachment would be impossible, but in our opinion there can be no question as to the correctness of the conclusion that at the time of impact the front of the school bus had, by little or much, actually entered the north lane of the highway in the path of the approaching Stephens' car.
There is also a marked variation in the testimony of the witnesses as to the fact of the movement, vel non, of the school bus. Defendant tendered testimony of five Negro children, ranging in age from 12 to 18 years at the time of the accident, who were passengers on the bus en route to their respective schools. Parenthetically, by way of clarification, we interject the observation that although these witnesses were passengers on the school bus they were not eye-witnesses to the occurrence of the accident for, according to their own testimony, none of them saw the Stephens' car until after the collision.
The testimony of these witnesses sharply conflicts as to some of the material facts relevant to the accident. Some testified that the bus was stopped, some that it was slowly in motion, or that they did not know whether it was stopped or in motion. The one witness among these passengers whose testimony *160 quite obviously is principally relied upon by counsel for defendant was one Celia Mae Morris Spencer, a sister of Sheppard Morris, the driver of the bus, and was at the time of trial a married woman, 21 years of age, and at the time of the accident an eighteen year old unmarried high school student. This witness testified that her brother had turned on the directional blinker light signaling a left turn at a distance of more than 100 feet before reaching the intersection; that the lever type stop signal was showing; that the witness herself had thrust out a red flag from the open window to her left of her seat immediately behind the driver; that her brother, Sheppard Morris, had brought the bus to a complete stop at the intersection and that it had so remained for a period of exactly seven seconds, being still in the stopped position before turning at the time of the impact. A considerable portion of the testimony of this witness is so palpably incredible as to discredit her entire testimony, and, indeed, we think this conclusion is so completely justified from a mere reading of her testimony that it is unnecessary to elaborate upon the specific details which render the conclusion obvious.
We find nothing of reliable value in the testimony of these passengers. The zealously urged and sincerely hoped for conclusion advanced in support of defendant's contentions is not justified in the slightest degree by the weight and effect of this testimony. The reasons advanced by Celia Morris for the stopping of the bus, in the position and at the time with respect to which she testified, was that the driver was accustomed to taking on several Negro school children as passengers at this point. This purported reason was not only completely controverted by the testimony of other witnesses but was substantially weakened, if not absolutely destroyed, by subsequent admissions of the witness herself.
We can only conclude, as did the district judge, that the evidence substantially preponderates in favor of the conclusion that the driver of the school bus was actually engaged in the turning movement and had entered upon the north lane of the highway in the path of the Stephens' vehicle at the time of impact. It must further be concluded that Morris, the driver of the bus, did not make observation of approaching traffic. To find otherwise would be equivalent to holding that Morris deliberately and wantonly turned into the lane of travel of an automobile whose approach he had perceived.
It is urged on behalf of defendant that the intersection of the Marco Road is just west of a steep incline of Highway 20 and that the automobile driven by the decedent, Stephens, moving at a high rate of speed, could not have been in view of Morris at the time he began his left turn. Such a conclusion would do violence to the established facts. Photographs and testimony introduced on behalf of plaintiff convincingly establish the fact that an automobile topping the crest of the hill east of the Marco Road intersection would be visible at a distance of approximately 400 feet, more or less, from the point at which the school bus was beginning its turning movement. The factor of speed enters into this consideration, and we think the evidence fixed the speed of the Stephens car as being at or about 50 miles per hour, for the face of the speedometer was crushed in by the force of the collision and the needle indicating speed was observed to have been fixed at the 50 m. p. h. mark. Additionally, the testimony of plaintiff's witness, W. L. Sharp, that the Stephens' car had passed him on Highway 20 a short distance east of the scene of the accident at a speed of approximately 50 miles per hour, serves to fix the speed at or near this figure. It must be borne in mind that an automobile appearing over the crest of the hill some 400 feet distant from the bus, even at a speed of 60 miles per hour, would require more than four seconds to negotiate such a distance. To conclude that the driver of the school bus actually observed the approach of this car over a time interval of four seconds and, nonetheless, proceeded *161 into its path, would be unreasonable and illogical to the point of absurdity.
The charges of negligence, or contributory negligence, against Stephens are not supported by the evidence. The conclusion that the bus was at a complete stop is not justified and, to the contrary, we are firmly convinced that it was in motion. In any event, we have not the slightest question as to the fact that the bus was partially over the center line of the highway and in the path of the Stephens' car. Neither does the evidence support a finding that the Stephens' car was moving at such a rapid rate of speed that it was not under such proper control. The speed of the Stephens' car, according to the best available evidence, could not be regarded as excessive under the circumstances and the inference of lack of control could only be established in the light of competent evidence as to factors of time and distance indicating the existence of a reasonable opportunity to avoid the accident, which evidence is non-existent in the instant case.
Counsel for defendant insist that Stephens "failed to use due care in approaching the intersection," and cite the general principle governing the exercise of necessary caution in approaching an intersection, etc., as enunciated in Loewenberg v. Fidelity Union Casualty Co., La.App., 147 So. 81; Gartman v. Traylor, La.App., 164 So. 660; Russo v. Aucoin, La.App., 7 So.2d 744; Forst v. Travelers Insurance Co., La. App., 15 So.2d 100; Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148; Geoghegan v. Greyhound Corporation, 226 La. 405, 76 So.2d 412, and Watkins v. Strickland Transportation Co., La.App., 90 So.2d 561. The facts and the proof in the cited cases, which we have thoroughly re-examined, are readily distinguishable from the case at bar. It must be pointed out that the pronouncement of a general principle or rule of law cannot be blindly accepted as the basis for a conclusion without consideration of the facts of an individual case, which must, in themselves, justify either the application or rejection of such a general principle.
It is further pertinent to observe in connection with the instant case that the averments of gross negligence and of lack of due care on the part of Stephens constitute elements of the defense to plaintiff's action and the burden of proving such elements is imposed upon the defendant. In our opinion the record fails to establish the proof requisite to the discharge of this burden.
After thorough consideration of the record we are convinced that the sole and proximate cause of the accident is attributable to the action of Morris in turning across the highway into his left lane of traffic in front of the approaching Stephens' automobile. We think it is abundantly clear that Morris attempted to make the turn either without making observation for traffic or that he failed to see the Stephens' car, which could and should have been seen, because the dirt and frost on the windshield of the bus, and quite possibly the distortion caused by the rays of the early morning sun, hindered or obstructed his vision.
Counsel for defendant further urges, by way of defense, that Sheppard Morris was not an employee of the School Board at the time of the occurrence of the accident. In support of this point it is urged that Morris owned the school bus and was paid a monthly sum out of which he defrayed his own expenses, which facts are sufficient to establish the relationship of an independent contractor, citing Olson v. Cushman, 224 Iowa 974, 276 N.W. 777. It is clear from the opinion in the cited case that the court predicated its conclusion upon the existence of a written contract between the school bus operator and the authorities of the school district. The opinion referred to and quoted from the case of Arthur v. Marble Rock Consolidated School District, 209 Iowa 280, 228 N.W. 70, 66 A.L.R. 718, in which the court quoted in full the governing provisions of the State statutes which required the execution of a written contract for transportation of school children between operators of transporting *162 vehicles and the school board. Under these circumstances we are unable to accept the cited authority as being in any degree applicable or appropriate to the case at bar.
In our opinion the conclusion as to Sheppard Morris' status as an employee of the defendant is inescapable under the facts of this case and the law of our State. According to the testimony of Mr. C. C. Graham, Superintentdent of Schools for Natchitoches Parish, Sheppard Morris was an employee of the School Board and this testimony was fortified by the introduction in evidence of extracts from minutes of meetings of the Natchitoches Parish School Board evidencing the employment of Sheppard Morris as a school bus driver and the acceptance of his resignation as an employee in such capacity following the occurrence of the accident. It is a matter of statutory law in this State that the status of an individual serving as a school bus operator is defined as being that of an "employee," LSA-R.S. 17:491. Such employees are protected by law, as to tenure, salaries, etc., LSA-R.S. 17:492 et seq.
Only slightly less untenable is the contention that Morris was not an employee at the time of the accident because he was driving his bus along a route of his own choosing before physically reaching the point designated by the School Board as the beginning of his mandatory route. At the time of the occurrence of the accident the bus was occupied by a dozen or more Negro children who were being conveyed to their respective schools. To say that Morris, driving a school bus occupied by school children en route to their schools, was not acting in the course and scope of his employment because he was a few minutes ahead of schedule and had not actually reached the exact location which was designated by the School Board as the beginning of his regularly scheduled course of travel, would do irreparable violence to every principle of ordinary reason.
Finally, we turn to a consideration of the question of the quantum of damages and plaintiff's prayer, advanced in her answer to this appeal, for an increase in the amount allowed by the judgment of the trial court.
The damages claimed by plaintiff individually are made up of items for loss of support, loss of love, affection, etc.; mental anguish, grief, etc.; funeral expenses and automobile damage. Asserted damages for the use and benefit of plaintiff's minor daughter are based upon the same nature of claims.
In fixing the amount of $25,000, in addition to funeral expenses and property damage to the automobile, as compensation awarded to plaintiff for the loss of her husband, it appears the district judge was influenced by the award made by this court in Perot v. United States Casualty Co., La.App., 98 So.2d 584, 592, and he stated in his written opinion:
"The Court of Appeal in the Perot case more or less fixed $25,000.00 as adequate compensation for the wife for the loss of her husband."
Certainly this court did not intend to fix, and we have been unable to find any language in the opinion of the court in the cited case which would indicate the establishment of the award therein as a complete and comprehensive measure of damages in all actions by a wife for the loss of a husband. In the Perot case we specifically stated that:
"In fixing an award, each case must necessarily stand on its own facts."
It suffices to observe in this connection that we find no similarity between the facts of the Perot case and those established in the instant cause with the single exception that they are both actions by widows for the recovery of damages resulting from the loss of their husbands.
Proceeding to a disposition of the several items of plaintiff's claims, it is noted that, by stipulation of counsel, the value of the Stephens' automobile, which was a total loss, was fixed in the sum of $750 and, as to this item, plaintiff would be entitled to the recovery, individually, of *163 one-half of said sum, and for the use and benefit of her minor daughter the remaining one-half thereof.
As to plaintiff's right to recover funeral expenses, counsel for defendant concede, in the event of judgment in her favor, that plaintiff is entitled to reimbursement of expenses totaling $699.45, but oppose the allowance of an additional expenditure in the sum of $405, resulting from the removal of the decedent's remains, after interment, to another location more satisfactory to the plaintiff. We think this point of opposition is well taken and it follows that the allowance of funeral expenses should be restricted to $699.45.
The most substantial item of damages asserted by plaintiff results from her claim in connection with loss of support, which her counsel contend should be fixed, on the basis of present value, in the amount of $65,940. This figure is based upon plaintiff's community interest in an alleged annual net earning of her decedent, as of the time of his death, in the amount of $6,000, over a life expectancy period of 31.4 years, discounted at 30% for the purpose of arriving at the present value.
In our opinion the above basis of computation is subject to several serious objections. Under the evidence in the instant case we cannot accept the amount fixed as the annual net income of decedent, nor does the record substantiate the life expectancy as fixed by counsel.
For some seven months or more prior to his death the decedent, Searcy B. Stephens, was employed as a traveling salesman of radio and T.V. supplies for the firm of Hale & McNeil of Monroe. A statement of earnings during the period of his employment furnished by his employer was admitted in evidence by agreement of counsel. This statement reflects earnings, month by month, from June, 1954, through February, 1955. The earnings for June, 1954 and February, 1955, are far below the average for the other seven months, which we assume is attributable to the fact that they cover only a part of the months set forth. Inasmuch as Mr. Stephens met his death in the accident of February 11, 1955, it is evident that his earnings for this calendar month could not be accepted in attempting to arrive at a fair monthly earning average. For these reasons we have computed the earnings for the seven full months from July, 1954, through January, 1955, and find that the gross earnings for this seven-month period amounted to $4,120.81, reflecting a monthly average of $588.69 gross earning capacity.
Out of his gross monthly earnings decedent paid all expenses in connection with his employment, using his own automobile, traveling over the northern portion of Louisiana five days each week and spending an average of about one night per week away from home. The evidence in the record bearing upon the monthly expenses of decedent in connection with his employment was woefully unsatisfactory. Mrs. Stephens testified that she thought her husband's monthly expenses amounted to at least $150 per month or "a little more." We have no alternative except to arbitrarily adopt a figure which we think will reasonably approximate the average monthly expenses of a person working under the conditions above noted. Taking all items into consideration, including automobile depreciation, cost of gasoline, ordinary living expenses in connection with traveling, etc., we think a conservative but adequate allowance for such expenses would reasonably approximate $190 per month. On the basis of average gross earnings of approximately $590 per month, deducting the approximation of expenses in the sum of $190 per month, we arrive at a net average monthly earning of $400.
It is zealously urged by counsel for plaintiff that decedent's earnings showed a substantial increase from month to month during his period of employment with Hale & McNeil, and that allowance should be made for an expectable, continued, commensurate increase in such earnings. We *164 are unwilling to accept this argument, because it is purely speculative and unsupported by any evidence. Additionally, it must be noted that reference to the monthly earnings does not indicate any trend of substantially increased earnings with the exception of the month of December, 1954, when plaintiff's earnings reached a peak of $795.86. This substantial increase in earnings obviously being attributable to the usual peak Christmas holiday business in such a line cannot be accepted as a true indication of constant average earning power.
For the reasons above stated in this connection we are convinced that an award based upon an average net monthly earning of $400 would be neither excessive nor inadequate.
Counsel for plaintiff based decedent's life expectancy upon a 41 year age in accordance with the United States Department of Health, Education and Welfare Mortality Tables, which they declare would fix the life expectancy in such case as being 31.4 years. It must be pointed out that the tables referred to by counsel were not introduced in evidence in this case and we think we must accept the expectancy set forth in the American Experience Table of Mortality specifically recited and adopted by LSA-R.S. 47:2405. It must be pointed out that decedent was born on April 17, 1913, and his age at his nearest birthday on the date of death, February 11, 1955, must be fixed at 42 years. Under the American Experience Table of Mortality the life expectancy of a person 42 years of age is fixed at 26.22 years.
In accordance with the procedure followed by this court in Marler v. State of Louisiana, La.App., 78 So.2d 26, which was predicated upon the computation of the Supreme Court in Jones v. Kansas City Southern Ry. Co., 143 La. 307, 78 So. 568, and which procedure was discussed in the opinion of our brother of the First Circuit, Judge Tate, in Duree v. State, La.App., 96 So.2d 854, we think the acceptable formula for computation of a widow's recovery for loss of support, based upon the average net earning power of the husband at the time of the death, should be set forth as follows:
 Annual Net Wage × Life
 Expectancy - Discount
 ----------------------
 2
Since we have above established the annual net wage schedule as being $4,800 and the life expectancy factor as being 26.22 years, the only remaining factor necessary to a reduction of the formula is the discount which must be applied in order to arrive at the present dollar value. It is therefore more acceptable to state the formula in a slightly different manner, representing plaintiff's entitlement under the item of loss of support in the present case as being:
 |$4,800.00 × 26.22|
 {-----------------------}  Discount
 | 2 |
 or
 $62,928.00 - Discount
In other words, the final result of the above calculation, stated with the utmost simplicity, is the conclusion that plaintiff in the instant case is entitled to recover, under the item of loss of support, the present value of the sum of $62,928, accruing in equal annual installments of $2,400 over a period of 26.22 years.
Adverting to the procedure followed and approved by the Supreme Court in Jones v. Kansas City Southern Ry. Co., supra, and accepting and adopting, for the reasons therein set forth, the rate of discount of 5%, the present value of plaintiff's loss of support amounts to the sum of $34,641.87.
After thorough study of this problem in the mathematics of finance in the interest of a standard of accuracy which we hope may serve as a basis for computation of awards in future cases, we have resolved not to follow the table of computation which was set forth in the opinion of the Supreme Court in Jones v. Kansas City Southern Ry. Co., cited supra. The court did not make reference to the source from which its table was derived, and it would appear that the failure to carry the annual rates to more *165 than two decimal places and the use of.05 as a constant annual rate of increase of the divisor more nearly effected a reasonably accurate approximation than an exact calculation.
The authority for our solution of the problem is the text, Mathematics of Finance, (Second Edition) by Thomas Marshall Simpson, Ph.D., Head of Mathematics Department, University of Florida, Zareh M. Pirenian, M.S., Associate Professor of Mathematics, University of Florida, and Bolling H. Crenshaw, M.E., LL.D., Late Head of Mathematics Department, Alabama Polytechnic Institute, published by Prentice Hall, Inc., New York, with particular references to Section 123 and Section 124, pages 202-203, and Table VI, page 96 of the Appendix of Tables.
The Problem:
----------------
 To determine the present value of an
annuity of $2,400.00 per annum over
a period of 26.22 years where the
worth of money is fixed at 5%.
The Formula:
-----------
An = R . a
 __
 n/i
An is Present value of annuity
R is Dollars per period
a __ is Present value of
 n/i annuity of 1 per period
 (Op. cit. § 123-124)
Substituting:
------------
An = $2,400.00 . a ______
 26.22/.05
An = $2,400.00 × 14.4341193*
An = $34,641.87
 *Interpolate using 22% of difference
 between 26 years and 27 years of
 Table VI, page 96.
 26 years 14.37518530
 27 years 14.64303362
 26.22 years 14.43411193
We acknowledge, with grateful appreciation, the invaluable expert service of Mr. W. W. Fuller, Assistant Cashier of the Commercial National Bank in Shreveport, in formulating and solving the above problem.
The next items asserted by plaintiff as a basis for the allowance of damages involve loss of love, affection, companionship and guidance; mental anguish, grief, sorrow and shock, all of which elements counsel for plaintiff have consolidated under the comprehensive heading of "Loss of Society," for which plaintiff claims the sum of $30,000. As has been many times observed by the several appellate courts of our State, there is no standard of measurement nor any monetary equivalent which can be fixed, with any degree of assurance, as compensation for the deprivation of these imponderable qualities. The evidence in the instant case as to the relationship that existed between husband and wife and father and child is somewhat more detailed than usual, and convincingly depicts a picture of affection and understanding between this wife and child and the husband and father. Any attempt to arrive at an exact evaluation of the loss sustained, reduced to dollars and cents, would be a practical impossibility. The allowance is purely discretionary and must be arbitrarily fixed. Accepting awards in similar cases, particularly Marler v. State, and Duree v. State, both cited supra, we have fixed the sum of $10,000 as the amount of the award in favor of the plaintiff wife with respect to this item of damages.
At this point it is pertinent to observe that counsel for plaintiff have devoted a substantial portion of their brief before this court to an able and thorough discussion of law bearing upon the question as to the admissibility of evidence of remarriage of a widow, with particular relation to the effect of such remarriage upon claims for damages. This point is not directly raised nor discussed by counsel for defendant, but, by indirection and implication, it was raised in their brief as a consideration which should be given effect by the court in its determination of the quantum of damages.
The record before us establishes the remarriage of this plaintiff on August 31, 1957, more than two and one-half *166 years after the death of her first husband, Searcy B. Stephens. The general rule, supported by what appears to be an overwhelming weight of authority in other jurisdictions and enunciated in 30 A.L.R. 123; 16 American Jurisprudence, § 234; and 25 C.J.S. Death § 114, p. 1263, is that the fact of remarriage of a surviving spouse is not to be considered as affecting or in any degree mitigating the damages to which such spouse would be entitled. As was observed by counsel for plaintiff in brief, it appears that the only pronouncement on this point in Louisiana Jurisprudence is to be found in Jones v. Kansas City Southern Ry. Co., 137 La. 178, 68 So. 401, in which the court declared that the evidence as to the engagement of the plaintiff widow to be remarried was irrelevant. The court further declared that even if such an engagement should actually result in remarriage, it did not follow that the condition of the plaintiff would be bettered. Finding ourselves in complete accord with the weight of authority on this point, and sustained in this conclusion by the pronouncement of the Supreme Court of our State in the case above cited, we have no hesitancy in holding that the engagement of a spouse, or the actual remarriage, is completely irrelevant to a consideration of the damages to which such spouse is entitled.
Finally it is necessary to give attention to the claims made by plaintiff for the use and benefit of the minor, Burt Devonne Stephens, who was fifteen years of age at the time of the death of her father. Counsel for plaintiff urged that the said minor is entitled to the benefit of an allowance of loss of support from her father in an amount of $2,000 per year over the six year period before attainment of her majority, subject to a discount based upon the present value of such a sum. In other words, counsel contended that the award for the use and benefit of the minor for loss of support should be fixed in the sum of $12,000, discounted to $9,000. We think it entirely unnecessary to enter into detailed consideration of this claim, deeming the figure of $9,000 to be entirely reasonable and justified under the circumstances.
With respect to the minor's recovery for the loss of society of her father, comprehending the loss of his love, affection, counsel and guidance, we are again confronted with the necessity of fixing an arbitrary figure. In our opinion the loss of her father by a young girl, just on the verge of entering upon womanhood, is serious and substantial. Whether or not a young female is fully aware of the need for reliance upon a male parent may be a debatable question, but, consciously or unconsciously, there is such a reliance. The feeling of security of which this young girl was deprived by the untimely death of her father represents, indeed, an incalculable loss. In our opinion an award of $10,000 represents a conservative evaluation of damage in this respect.
Recapitulation of the awards made for the several items of damage claimed by plaintiff is as follows:

 (a). In favor of plaintiff
 individually:
 1. An undivided one-half
 of the stipulated
 value of automobile
 destroyed by the
 accident $375.00
 2. Funeral expenses 699.45
 3. Loss of support
 (present value) 34,641.87
 4. Loss of society 10,000.00
 __________
 Total $45,716.32
 (b). In favor of plaintiff
 for the use and benefit
 of the minor, Burt
 Devonne Stephens:
 1. An undivided one-half
 of the stipulated
 value of
 automobile destroyed
 by the accident 375.00
 2. Loss of support 9,000.00
 3. Loss of society 10,000.00
 __________
 Total $19,375.00

*167 For the reasons hereinabove set forth the judgment appealed from is amended and recast to read as follows:
It Is Ordered, Adjudged and Decreed that there be judgment herein in favor of plaintiff, Mrs. Claudia Beth Williams Stephens, and against the Natchitoches Parish School Board, in the total sum of $45,716.32, and in favor of the plaintiff, Mrs. Claudia Beth Williams Stephens, for the use and benefit of the minor, Burt Devonne Stephens, and against the Natchitoches Parish School Board in the full sum of $19,375.
It Is Further Ordered, Adjudged and Decreed that the principal amounts of the judgments as above set forth shall bear interest at the rate of 5% per annum from date of judicial demand until paid.
There is further judgment taxing the defendant, Natchitoches Parish School Board, with such costs of both courts as it is required to pay by law.
As above amended and recast, the judgment appealed from is affirmed.